LAUREL BANK AND TRUST
COMPANY

v.

John BURNS.

Supreme Judicial Court of Maine.

Feb. 26, 1979.

Stitham, Clapp & Cunniff by Michael J. Cunniff (orally), Pittsfield, for plaintiff.

Vafiades, Brountas & Kominsky by Susan R. Kominsky (orally), Lewis V. Vafiades, Paine & Lynch by Martha J. Harris, Bangor, Jude & Cox by Robert E. Cox, Newport, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

NICHOLS, Justice.

Pursuant to an agreement of counsel for a docket entry, on September 26, 1977, the Superior Court in Penobscot County entered judgment against the three Defendants in this contract action. One Defendant, John Burns, on December 5, 1977, moved pursuant to M.R.Civ.P. 60(b)(1) to vacate the judgment against him. The Superior Court denied his motion. He brings his appeal here, arguing (a) that the agreement of counsel for the docket entry was executed without his express authority and (b) that the court below should have granted him such relief due to his attorney's mistake, inadvertence or excusable neglect of his attorney.

The sole issue before us is whether the Superior Court abused its discretion in denying relief upon the Defendant's motion.

We deny his appeal.

By complaint filed December 18, 1974, the Plaintiff, Laurel Bank and Trust Company, sought recovery from three Defendants, James M. Albert, Robert Dunn and John Burns, of $50,000 allegedly due it under a security agreement covering certain travel-trailer units. The Bank charged the Defendants with conversion of those units. An answer on behalf of all three Defendants was timely served and filed by their attorney.

This action lay dormant for more than two years. During the two year period the attorney for the three Defendants also represented one of them, Robert Dunn,[1] who along with a second Defendant, James M. Albert, was charged in contemporaneous criminal prosecutions. Speaking of the civil action, this attorney conceded, "I never thought of it for a two and half year period."

In March, 1977, this civil action was continued on the Plaintiff's motion. Simultaneously with the filing of that motion the Plaintiff's pre-trial memorandum was filed. There is no indication that the Defendants' attorney filed any trial memorandum in their behalf.

In April, 1977, a pre-trial conference was held and there was entered a pre-trial order, which reflected this attorney's consent to having the case placed upon the court list for trial. We can infer from his testimony that this attorney did not advise Defendant Burns that the case against him was assigned for pre-trial conference nor did he inform Defendant Burns of the action taken at the pre-trial conference.

During the same month of April the attorney for the Plaintiff and the attorney for the three Defendants consulted by telephone concerning possible settlement of the action, mentioning specifically, however, only the names of Albert and Dunn. Subsequently the Defendants' attorney consulted Albert and Dunn and determined that both had such meager assets that they were willing to consent to entry of judgment in full against themselves.

Next the attorneys for the respective parties orally agreed to stipulate to judgment for the Plaintiff, making no mention by name of the third Defendant, John Burns. Thereupon, the attorney for the three Defendants signed an agreement for docket entry (prepared by the Plaintiff's attorney), expressly granting judgment against all three Defendants in the amount of $50,000 plus costs. There is no allegation or suggestion of fraud on the part of the Plaintiff's attorney in including the Defendant, John Burns, in that agreement.

The Defendant's attorney acknowledged that he did not read the agreement for docket entry before signing it. He asserts he read only the cover letter from the Plaintiff's attorney, which referred to "James M. Albert et als. [sic]" as Defendants. He claimed that he had forgotten the involvement of his client, John Burns, in the case during the long dormancy of the action and his representation meanwhile of Albert and Dunn in the related criminal action.

Significantly, he offered no justification or excuse whatsoever for his failure to note on the agreement for docket entry the name of his client, John Burns, where it appeared not once, but twice, on the very sheet he signed, agreeing to judgment against all three of his clients.

Further, at the hearing in the Superior Court a single question was directed to the lack of authority on the part of the Defendant's attorney. Responding, that attorney stated he had no authorization from Defendant Burns to confess judgment against him. There was no further reference during the hearing to this fact or to any issue derived from this fact.

We consider initially the argument which the defendant Burns raises for the first time in this Court, that he is entitled to relief on the grounds that the judgment against Burns was void because of the attorney's admitted lack of authority to enter into the agreement for docket entry, which resulted in the judgment against Burns.

■ Assuming *arguendo* that an attorney does not have authority to consent to judgment merely by virtue of his being retained to represent a litigant,[2] we do not

1. *See State v. Dunn*, Me., 368 A.2d 595 (1977); *State v. Dunn*, Me., 370 A.2d 1099 (1977).

2. *See Pomeroy v. Prescott*, 106 Me. 401, 76 A. 898 (1910); *Thomsen v. Terrace Navigation Corp.*, 490 F.2d 88 (2d Cir. 1974); *Senyshyn v. Karlak*, 450 Pa. 535, 299 A.2d 294 (1973); *but see Beliveau v. Amoskeag Mfg. Co.*, 68 N.H. 225, 40 A. 734 (1895); *Eida v. Stoddard*, 111 N.H. 123, 276 A.2d 12 (1971); *Sustrik v. Jones & Laughlin Steel Corp.*, 189 Pa.Super. 47, 149 A.2d 498 (1959).

reach the issue on this appeal because the Defendant failed to present it to the Superior Court. In the examination of the Defendant's attorney at the hearing upon his M.R.Civ.P. 60(b)(1) motion there was a single question directed to whether he was authorized by the Defendant to confess judgment against him. The attorney's answer was in the negative. At no time in Superior Court did the Defendant contend to the justice hearing this motion that the legal consequence of his lack of authority was to make the judgment void. In the Superior Court sole reliance was placed on the attorney's "mistake" or "neglect." At no time in Superior Court did the Defendant question the amount of the judgment against him or contend that the amount was unconscionable. At no time did the Defendant ask the Superior Court to set aside the judgment against him upon the ground that the attorney lacked authority or upon the ground that the amount thereof was unconscionable.

First, the Defendant Burns brought his motion under M.R.Civ.P. 60(b)(1), thus expressly seeking vacation of the judgment against him on the grounds of "mistake, inadvertance [sic], surprise, or excusable neglect." He did not invoke M.R.Civ.P. 60(b)(4) to vacate upon the ground that the judgment was void. Neither did he invoke M.R.Civ.P. 60(b)(6) to vacate for any other reason justifying relief from the operation of the judgment.

Secondly, and apart from the matter of his pleading, at the close of the hearing upon his motion, both parties were given an opportunity by the Superior Court "to argue" the motion. The Defendant Burns chose not to argue. It thus appeared that the sole ground he asserted for relief from judgment was the attorney's mistake. His adversary directed his argument to this issue of mistake. Thus the Defendant foreclosed appellate review of the issue of voidness because of lack of authority.

■ M.R.Civ.P. 46 mandates that a party make known to the court, at the time the ruling or order of the court is sought, not only the action which he desires the court to take, but also the grounds he asserts therefor. A party who seeks to raise an issue for the first time at the appellate level is held to have waived that issue insofar as he utilizes it to attack the judgment or order from which he appeals. A major policy underlying this principle is to ensure that the trial court has full opportunity to dispose finally of the action. *Harrington v. Inhabitants of the Town of Garland,* Me., 381 A.2d 639, 642–643 (1978).

■ The consequences of failing in the trial court to preserve for appeal this possible ground of attack upon the stipulated judgment are not avoided by here labeling the defect in the attorney's authority as "jurisdictional." When the Defendant brought his M.R.Civ.P. 60(b) motion, he was bound to assert in the trial court all grounds for relief from the judgment which he had, or risk loss of the grounds unasserted there (such as the claim that the attorney lacked authority or a claim that the judgment was in an unconscionable amount). *Willette v. Umhoeffer,* Me., 268 A.2d 617, 619 (1970). This rule is applied even though the unasserted ground is jurisdictional. *Id.*

We turn now to the other grounds upon which the Defendant Burns urges he is entitled to relief from this judgment, namely mistake, inadvertence, surprise or excusable neglect in the granting of said judgment.

At oral argument this Defendant took the position that his attorney's action was due to mistake, and not due to neglect, thus avoiding, as he saw it, the task of persuading the Court that it was excusable neglect.

■ His attempt to draw this distinction misses an important point. Whether it is a case of mistake or a case of neglect, the movant under M.R.Civ.P. 60(b) must make some showing of why he was justified in failing to avoid the mistake or the inadvertence. 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2858, p. 170

(1973).[3] In the case at bar such justification would be tantamount to a showing by this Defendant that his attorney's mistake was excusable.

 A motion for relief from judgment, such as this, was addressed to the sound discretion of the Superior Court. Its denial of the motion for such relief is reviewable by this Court only for abuse of discretion. *Ingham v. Tzikas*, Me., 320 A.2d 665, 667 (1974); *Warren v. Waterville Urban Renewal Authority*, Me., 290 A.2d 362, 365 (1972). A party seeking such relief from judgment had the burden of presenting competent evidence from which the court in the exercise of sound judicial discretion could conclude that the judgment was entered under circumstances which M.R.Civ.P. 60(b)(1) recognizes as justifying vacation of the judgment. *Sheepscot Land Corp. v. Gregory*, Me., 383 A.2d 16, 20 (1978).

The delay in the prosecution of this case can hardly justify this attorney's failure to remember that the Defendant Burns was a party to the action. After the pre-trial proceedings, including a pre-trial conference in April, 1977, it is difficult to see how the attorney would be justified in saying that in August, 1977, he was unaware of Burns' status as a party.

It would have been even more difficult for the Superior Court to find that the attorney was justified in failing to observe the actual text of the agreement for docket entry, in which text the Defendant Burns was twice mentioned by name.

 We conclude that the Superior Court did not abuse its discretion in denying the motion of the Defendant Burns for relief from the judgment against him.

The entry will be:

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.

GODFREY, Justice, dissenting.

On December 31, 1974, appellee Laurel Bank commenced an action against three defendants: Albert, Dunn, and appellant Burns. The first count of the complaint alleged that the bank held a perfected security interest under a security agreement entered into between the bank and a person doing business as Canaan Marine and Camping Center ("Canaan Marine"), dated May 2, 1973; that the security agreement and financing statement covered as collateral all inventory then owned or after acquired; that sometime in early March, 1974, the defendants acquired, by purchase or otherwise, certain units of travel trailer inventory of Canaan Marine that were subject to the bank's perfected security interest; that Canaan Marine was at that time in default under the security agreement and the bank was entitled to possession of the trailer units as part of the collateral; that defendants' acquisition of the units and refusal to surrender possession of them to the bank caused it financial loss for which they have not reimbursed the bank; that the value of the units was $35,000 at the time of their acquisition by defendants.

A second count of the complaint alleged also that the defendants' acquisition of the trailer units was not a good-faith purchase in the ordinary course of business but that defendants acted in concert to deceive and defraud both Canaan Marine and the bank, and that defendants converted the units to their own use to the damage of the bank in the amount of $50,000. The complaint nowhere alleges the amount of the debt owed by Canaan Marine to the bank either at the time of the alleged conversion of the collateral or at the time of the commencement of the action. A list of the particular trailer units alleged to have been wrongfully acquired by defendants was attached to the complaint.

All three defendants were represented by the same lawyer, appellant's attorney, who filed a timely answer denying all allega-

---

**3.** *See also Winfield Assoc., Inc. v. Stonecipher*, 429 F.2d 1087, 1090 (10th Cir. 1970); *Sears, Sucsy & Co. v. Insurance Co. of North America*, 392 F.Supp. 398, 412 (N.D.Ill.1974); *Petition of Pui Lan Yee*, 20 F.R.D. 399, 401 (N.D.Cal. 1957).

tions of the complaint that asserted liability on the part of any of the defendants. The action lay dormant until March, 1977. Meanwhile, defendants Albert and Dunn were indicted, convicted, and sent to prison for criminal offenses arising out of the events that led to the civil action against them. The third defendant, appellant Burns, was not prosecuted. Dunn was represented by appellant's attorney in his criminal trial and appeal; Albert was represented by other attorneys.

In March, 1977, the civil action having been placed on the list for dismissal for want of prosecution, the plaintiff bank obtained an order granting a continuance, and in April, 1977, the Superior Court issued a pretrial order placing the case on the court list. The pretrial order stated nothing about the nature of the case, the issues, or the evidence to be introduced.

Sometime in the spring or summer of 1977, the bank's lawyer called the attorney for the three defendants by telephone to discuss possible disposition of the action. During the conversation, only the names of Albert and Dunn were specifically mentioned. The attorney for the three defendants told the bank's lawyer that Dunn, still in prison, had informed him that on his release he was going to file a petition in bankruptcy, "so that a judgment against him meant nothing." Moreover, Albert, already released from prison, had said he had nothing and, if necessary, would file in bankruptcy. The attorney concluded that neither Albert nor Dunn was interested in defending the action.

Forgetting that Burns was also a party defendant to the action, appellant's attorney agreed to sign a docket entry for judgment against the defendants in the bank's action. Though Burns had not been mentioned in the discussions, the bank's lawyer assumed that he should be included in the docket entry inasmuch as the coming trial of the action would involve all three defendants. Accordingly, he prepared a docket entry including all three names. By a covering letter entitled *"Re: Laurel Bank and Trust Company vs. James M. Albert, et*

*als.*[sic]*"*, he forthwith transmitted to appellant's attorney a docket entry naming all three defendants in the caption and in the text of the entry itself, which provided as follows:

> "That Judgment be entered in favor of the Plaintiff against Defendants, James M. Albert, Robert Dunn and John Burns, severally and jointly, for the relief prayed for in Plaintiff's Complaint, being the sum of Fifty Thousand Dollars ($50,-000.00) plus cost of suit."

Appellant's attorney signed the entry and mailed it back to the bank's attorney, who filed it with the clerk of courts. The clerk entered judgment on the docket on September 26, 1977. On the same day, the bank filed a request for execution to issue. One month later execution issued against Burns's property.

When Burns discovered his plight after getting notice of a sheriff's sale, he moved within a reasonable time to vacate the September 26 judgment on the ground of "mistake, inadvertence, surprise, or excusable neglect" under Rule 60(b)(1), M.R.Civ.P. His motion does not attack the judgment either as "void" under Rule 60(b)(4) or for any other reason justifying relief from the operation of the judgment under Rule 60(b)(6).

The Superior Court held a hearing on the motion to vacate. Testimony was given by appellant's attorney and the lawyer who represented the appellee bank in the discussions that led up to the signing of the docket entry. The testimony of the two lawyers was not in conflict. Appellant's attorney said he simply forgot that Burns was a defendant in the bank's action. During the two and one-half years between the bank's commencement of the action and the signing of the docket entry, he had not communicated with Burns about the action. He had drawn deeds for Burns, however, and knew he had assets. With that knowledge he testified that he never could have agreed to a default judgment against Burns. He knew that the case had been

continued in April to avoid dismissal under the two-year rule but did not think about Burns in connection with the continuance. When he signed the docket entry, he did not think about the fact that Burns was a named defendant and would be bound by the document.

Nothing in the testimony suggests that the bank's lawyer deliberately misled appellant's attorney. The bank's lawyer testified that his investigation of the real estate assets of the defendants took place after the docket entry had been made. Throughout the transaction he assumed that Burns was to be included in the docket entry.

Without opinion, the Superior Court denied the motion to vacate the judgment under Rule 60(b)(1). Although the granting or denial of a Rule 60(b) motion rests largely in the sound judicial discretion of the trial court, I think it was error to deny the motion in the unusual circumstances of this case.

The language of Rule 60(b) of the Maine Rules of Civil Procedure is derived from that of Rule 60(b) of the Federal Rules of Civil Procedure, as amended in 1946, and the operative language of section (b)(1) is identical in the Maine and federal rules:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect."

Rule 60(b) provides for certain exceptions to the principle of finality of judgments. Generally speaking, that principle "serves a most useful purpose for society, the courts, and the litigants." 7 J. Moore, Federal Practice ¶ 60.19 at 239 (2d ed. 1948). For that reason, though Rule 60(b) is often described as a remedial rule to be liberally construed,[1] the federal and Maine courts have applied it cautiously.[2] Normally, where a federal court's determination in a particular case reflects careful appraisal of the facts and balancing of the interests involved, the appellate courts defer to the trial court's exercise of its sound legal discretion.[3] That exercise of discretion must be more closely examined, however, where the trial court's denial of 60(b) relief has precluded any consideration of the merits of the controversy,[4] especially when the party has not been personally at fault but has been defaulted through the negligence of counsel,[5] or when a large sum of money is involved.[6]

Where a judgment of dismissal or default has been rendered without any examination of the merits, the trial court should consider "whether in the particular case the interest of deciding cases on the merits outweighs the interest in orderly procedure and in the finality of judgments."[7] In such a case attention should be given to whether there appears to be any merit in the defense or claim.[8] Additional factors may be relevant to the justice of granting or denying the motion: for example, whether significant reliance interests have developed on the

1. *E. g., Bridoux v. Eastern Air Lines*, 93 U.S. App.D.C. 369, 214 F.2d 207, 210 (1954), *cert. denied*, 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647; *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951).

2. *See, e. g., Bennett v. Federal Deposit Insurance Corp.*, 396 F.2d 909 (9th Cir. 1968); *Ingham v. Tzikas*, Me., 320 A.2d 665 (1974); *Willette v. Umhoeffer*, Me., 245 A.2d 540 (1968). *See* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2857 (1973); B. Wham, *Federal District Court Rule 60(b): A Humane Rule Gone Wrong*, 49 A.B.A.J. 566 (1963).

3. *Nederlandsche Handel-Maatschappij, N.V. v. Jay Emm, Inc.*, 301 F.2d 114, 115 (2d Cir. 1962).

4. *Schwab v. Bullock's, Inc.*, 508 F.2d 353 (9th Cir. 1974); *Spann v. Commissioners*, 143 U.S. App.D.C. 300, 443 F.2d 715, 716 n. 1 (1970); *Leong v. Railroad Transfer Service, Inc.*, 302 F.2d 555 (7th Cir. 1962).

5. *Barber v. Turberville*, 94 U.S.App.D.C. 335, 218 F.2d 34 (1954).

6. *Rooks v. American Brass Co.*, 263 F.2d 166 (6th Cir. 1959).

7. 7 J. Moore, Federal Practice ¶ 60.19 at 239 (2d ed. 1948).

8. *Tozer v. Charles A. Krause Milling Co., supra* note 1, at 244–45; *Sheepscot Land Corp. v. Gregory*, Me., 383 A.2d 16, 24 (1978).

basis of the judgment under attack.[9] Rule 60(b)(1) is not available for relief from the consequences of a deliberate choice of trial strategy which has proved unfortunate.[10]

In this case, the trial justice made no explicit findings in support of his decision, and the record reveals nothing from which we can infer any reason that he might have had for denying the motion. In particular, he made no finding as to whether there may be merit in appellant's defense. This case is unusual in that it appears probable from the face of the pleadings that appellant has, at the very least, some defense in the matter of damages. The complaint nowhere alleges the amount due on the unpaid debt for which the trailer units were alleged to be security. The first count of the complaint seems to make a claim for reimbursement for appellee's financial loss resulting from the conduct of appellant and the two other defendants, but the nature or amount of that loss is not particularly alleged. The second count alleges conversion of the trailer units by the three defendants to appellee's great financial loss and damage. The complaint contains one prayer for judgment, applicable to both counts, in the amount of $50,000 with interest and costs. Since the amount of the unpaid debt is not alleged and since the total value of the trailer units at the time they were "acquired" by the defendants is alleged to have been only $35,000, it is difficult to hypothesize a state of facts in which the appellee's judgment of $50,000, plus cost of suit, against appellant Burns does not greatly exceed the amount of damage appellee actually sustained as a result of any act of Burns. In short, it can be inferred from the pleadings that the judgment probably results in a large windfall to the appellee at appellant's expense. This feature of the present case distinguishes it from some other Rule 60(b) cases in which no showing was made of a meritorious claim or defense. Compare Sheepscot Land Corp. v. Gregory, Me., 383 A.2d 16, 24 (1978).

In the more common case where a default judgment is entered against a defendant who has failed to plead or otherwise defend, the defendant is given some protection with respect to the amount of the judgment when the claim is not for a sum certain or for a sum which can by computation be made certain. Rule 55(b), M.R.Civ.P. The purpose of Rule 55(b) is to prevent judgments for excessive amounts where defendants fail to defend against unliquidated claims. That purpose should not be disregarded in a case like the present one. Though the judgment entered in this case is not in terms covered by Rule 55, the fact that it appears to be seriously disproportionate to the actual damage of the appellee is one factor to be considered in the balancing process that Rule 60(b)(1) requires.

The record discloses none of the factors that often militate against setting aside a judgment under Rule 60(b)(1). The trial court's control of its calendar is in no way impaired. The authority, or apparent authority, of attorneys to act for their clients is not really impugned: the consent of appellant's attorney to the entry of judgment was not consent to a true settlement involving a trade-off of advantages and disadvantages for both sides; the appellee gave up nothing to obtain the entry of judgment. This is not a case in which a party is trying to get out of a bad bargain or escape the consequences of a deliberate choice of strategy. Appellee bank has not changed position to its detriment in reliance on the judgment. No third-party rights have intervened.

The evidence that Burns's attorney forgot about appellant Burns when he consented to entry of judgment against his three defendants is clear and convincing in the light of the circumstances revealed by the record. Since he stated in his testimony that he had not been misled by anything

---

9. *Bibeau v. Northeast Airlines, Inc.,* 139 U.S. App.D.C. 28, 429 F.2d 212 (1970); *Tozer v. Charles A. Krause Milling Co., supra* note 1, at 246. *See* C. Wright & A. Miller, *supra* note 2, at 161.

10. *Sampson v. Radio Corp. of America,* 434 F.2d 315 (2d Cir. 1970); *Reville v. Reville,* Me., 370 A.2d 249 (1977).

the bank's attorney said or did, his inadvertence must be regarded as a form of "neglect" within the meaning of the rules. Whether his inadvertence or neglect was "excusable" is to be determined after a balancing of the factors discussed above and not solely by reference to whether some degree of justification can be found for his oversight.

It is unconscionable to permit the appellee bank to execute on a $50,000 judgment inadvertently confessed, where there has been no inquiry whatever into the nature or amount of the injury, if any, sustained by the appellee as a result of appellant's attorney's careless act. Justice clearly required that appellant's motion be granted in order that the merits of the case could be heard and determined. I would sustain the appeal, vacate the judgment with respect to appellant Burns, and remand for entry of an order granting appellant's motion under Rule 60(b)(1) to set aside the judgment insofar as it affects appellant.